**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL SCOTT BRANDT

                              Plaintiff,

      - v -                                                Civ. No. 9:13-CV-00533
                                                                 (FJS/DJS)

DR. REBECCA ACKERMAN RAPHAEL, *Psychiatrist,*
*Hudson Valley Psychiatric Association*; DR. JAMES BOVE,
*Psychiatrist, Hudson Valley Psychiatric Association*,

                              Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

MICHAEL SCOTT BRANDT
Plaintiff, *Pro Se*
92 East Chester Street
Kingston, NY 12401

SMITH, SOVIK LAW FIRM                KEVIN E. HUSLANDER, ESQ.
Attorney for Defendant Raphael          CHRISTOPHER F. DeFRANCESCO, ESQ.
250 South Clinton Street Suite 600
Syracuse, NY 13202

O'CONNOR, O'CONNOR LAW FIRM      DENNIS A. FIRST, ESQ.
Attorney for Defendant Bove               ANNE M. HURLEY, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

In this civil rights action, Plaintiff asserts constitutional claims arising out of his confinement at the Ulster County Jail during the period of December 2009 through December 2011. Dkt. No. 16, Second Am. Compl. During that time period, Plaintiff states that he was provided anti-psychotic medication for anxiety, depression, and a mood disorder, and that this medication caused him to

develop symptoms of Tardive Dyskinesia ("TD").[1] *Id*. at pp. 4-7 & 10.[2] Plaintiff claims that he was never informed that developing TD was a potential side effect of these medications. *Id*. at pp.6-7. Plaintiff seeks monetary damages. *Id*. at p. 11.

Defendants have each filed Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. Nos. 55 & 57.[3] Despite being granted multiple extensions of time to respond, Plaintiff has failed to respond to the Motions. Based upon the following discussion, the Court recommends that the Defendants' Motions for Summary Judgment be **granted**, and that Plaintiff's entire action be **dismissed**.

## II. MATERIAL FACTS

Unless otherwise stated, the following factual recitation is undisputed.[4] Plaintiff's history is undeniably sad. At age fourteen he broke up with his girlfriend and she committed suicide a few

---

[1] Tardive Dyskinesia is defined as "[a] neurological syndrome characterized by repetitive, involuntary, purposeless movements caused by the long-term use of certain drugs called neuroleptics used for psychiatric, gastrointestinal, and neurological disorders. Features may include grimacing; tongue protrusion; lipsmacking, puckering, and pursing; and rapid eye blinking. Rapid movements of the arms, legs and trunk may also occur." *Definition of Tardive Dyskinesia*, MEDICINENET.COM, *available at* http://www.medicinenet.com/script/main/art.asp?articlekey=24146 (last visited March 24, 2016); *see also Washington v. Harper*, 494 U.S. 210, 230 (1990).

[2] Citations to the Plaintiff's Second Amended Complaint, which is a combination of Plaintiff's initial pleading and the three written pages (with Exhibits) he subsequently submitted in response to a Court Order, are to the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") system.

[3] Defendant James Bove's Motion, noted on the Court's Docket as Docket Number 55, consists of the following: Memorandum of Law, Dkt. No. 55-1; Anne M. Hurley, Esq., Aff., dated July 7, 2015, Dkt. No. 55-2, with Exs. A-E, Dkt. Nos. 55-3 through 55-17; James Bove, Aff., dated June 25, 2015, Dkt. No. 55-18, with Ex. A, Dkt. Nos. 55-19 through 55-27; Jeffrey D. De Lisle, Aff., dated July 1, 2015, with Ex. A, Dkt. No. 55-28; and a Statement of Material Facts Pursuant to Local Rule 7.1(a)(3).

Defendant Raphael's Motion, noted on the Court's Docket as Docket Number 57, consists of the following: Kevin E. Huslander, Esq., Decl., dated July 27, 2015, Dkt. No. 57-1, with Exs. A-C, Dkt. Nos. 57-2 through 57-7; Rebecca Ackerman Raphael, M.D., Aff., dated July 28, 2015, Dkt. No. 57-8, with Ex. A, Dkt. No. 57-9; Statement Pursuant to Local Rule 7.1(A)(3), Dkt. No. 57-10; and a Memorandum of Law, Dkt. No. 57-11.

[4] As noted herein, the Plaintiff did not specifically counter either Defendant's Statement of Material facts, which allows this Court to deem such facts, if properly supported, to be true. The Court finds, in any event, that many of the facts presented are not reasonably in dispute. Although Defendants file separate Motions, the material facts are similar and overlap.

weeks later. Dkt. No. 55-2, Ann M. Hurley, Esq., Aff., dated July 7, 2015, Ex. E, at pp. 20-21.[5] Since then, Mr. Brandt has tried to commit suicide numerous times. *Id*., Ex. E at pp. 20-23, 105, & 124. When he was young, he suffered a self-inflicted injury when he hit himself in the head with a hammer. *Id*., Ex. E at pp. 105-07. He was hospitalized on numerous occasions from his younger years into his thirties as a result of his mental health conditions.[6] *Id*., Ex. E at pp. 20-24. He also has a history of drug and alcohol abuse. *Id.*, Ex. E at p. 24, 31, & 85 ("Cocaine does mess you up. I have done cocaine so long, I literally ate a hole through my nose, my nasal passage from using so much.").

During the time at issue in this action, Brandt was being held in the Ulster County Jail due to his arrest for criminal contempt in the first degree and burglary in the second degree. *Id*., Ex. E at pp. 14 & 18. As noted above, the evidence shows Plaintiff had been treated with anti-psychotic medication prior to being housed in the Ulster County Jail. Dkt No. 57-8, Rebecca Ackerman Raphael, M.D., Aff., dated July 28, 2015, at ¶¶ 7 & 20. According to Plaintiff, he first started Lexapro and Abilify at age seventeen, and also has taken Depakote, Neurontin, and Lithium. Hurley Aff., Ex. E at pp. 24-25 & 28. He relayed that at the time he committed these crimes, he had taken himself off his medication, and then went to see his ex-wife, who had an order of protection in place. *Id*., Ex. E at pp. 14-15 (explaining that he "bugged out[,]" started looking at snowbanks for footprints, and then had contact with his ex-wife when he "happened to push her and she hurt

---

[5] Attorney Hurley attached several Exhibits to her Affidavit, which, because of its size, were filed in separate attachments as follows: Dkt. Nos. 55-3 through 55-5, Hurley Ex. A; Dkt. No. 55-6, Hurley Ex. B; Dkt. No. 55-7, Hurley Ex. C; Dkt. Nos. 55-8 through 55-11, Hurley Ex. D; Dkt. Nos. 55-12 through 55-17, Hurley Ex. E. When citing to Exhibits attached to this Affidavit, the Court will identify the Exhibit letter and identify the page number as set forth on the Exhibit.

[6] Mr. Brandt has an extensive criminal history and describes his "rap sheet" as fourteen pages long. Hurley Aff., Ex. E at pp. 9-12 & 14.

herself").

Upon his admission to Ulster County Jail on December 3, 2009, Plaintiff was evaluated by a nurse. Raphael Aff. at ¶ 2. During his time at that Jail, Plaintiff was put on Thorazine, Thazodone, and Lithium. Hurley Aff., Ex. E at pp. 28-29. In general terms, Plaintiff acknowledges that the anti-psychotic medication helped him. *Id*., Ex. E at pp. 48 & 97. With regard to the side effects, Plaintiff claims that he was biting his cheeks as early as 2007, and was biting his cheeks or grinding his teeth and experienced leg shaking in 2009, prior to being incarcerated at the Ulster County Jail. *Id*., Ex. E at pp. 38-40. At his examination before trial, when was asked if he put in over fifty sick calls during the two years at issue at Ulster County, Plaintiff responded that he had been seen a lot, and that he always received responsive medical care at Ulster. *Id*., Ex. E at pp. 165-68.

On December 4, 2009, the Plaintiff underwent a psychiatric evaluation by a different psychiatrist, Dr. Adelhamid, who noted that Plaintiff had been treated for bipolar disorder, chronic depression, and anxiety for over twenty years, and that treatment included the use of anti-depressant, anti-anxiety, and anti-psychotic medications. *Id.* at ¶ 7.

Dr. Raphael, a duly licensed psychiatrist, was employed by Hudson Valley Psychiatric Associates, and during the time relevant to the Second Amended Complaint was providing psychiatric care to inmates at the Ulster County Jail pursuant to a contract. Raphael Aff. at ¶¶ 1-2. Dr. Raphael first saw Plaintiff on December 8, 2009, at which time Plaintiff was refusing to take the anti-anxiety and restlessness drug Neurontin because he felt the dosage was too low. *Id*. at ¶¶ 8 &10. Dr. Raphael increased the dosage and prescribed other medication. *Id.* The Plaintiff's condition improved, and the medication regimen was continued. *Id.* at ¶ 12. However, Plaintiff then threatened suicide on January 10, 2010, and was placed on one-on-one monitoring. *Id.* at ¶ 14. On

January 12, 2010, Dr. Bove performed a Suicide/Homicide Risk Assessment. Raphael Aff., Ex. B2, at p. 74. During that assessment, Plaintiff specifically requested Depakote (used to treat manic-depressive issues) and the medication was given as a trial for thirty days. *Id.*

In February of 2010, Plaintiff demonstrated signs of psychomotor restlessness and anxiety to Dr. Raphael. Raphael Aff. at ¶ 17. In response, Dr. Raphael increased the Dapakote to 1000 mg, and ordered blood work to monitor Plaintiff's liver function. *Id*. In mid-February of 2010, Dr. Raphael observed Plaintiff cheek biting and showing increased restlessness after having received significant legal news, and as a result, she adjusted Plaintiff's medication. *Id.* at ¶ 18. In addition, that April, Dr. Raphael started a trial of the anti-depressant Trazodone and the anti-psychotic Thorazine. *Id*. at ¶ 20. Though Plaintiff states otherwise, Dr. Raphael asserts that she advised Plaintiff of the potential side effects of Thorazine. *Id.* at ¶ 21. After certain negative physical responses to the drug were noted, the Thorazine was stopped. *Id*. at ¶ 22. However in May 2010, the Plaintiff specifically requested that it be prescribed again because he was having difficulty sleeping without the medication and, based upon this request, Thorazine was restarted. *Id.* at ¶ 23.

In August 2010, Plaintiff presented to Dr. Raphael visibly shaking and grinding his teeth, and the Thorazine was increased. *Id.* at ¶ 26. On January 24, 2011, Dr. Raphael again evaluated Plaintiff. *Id.* at ¶ 31. At this time she observed that Plaintiff's chin and neck were twitching, and therefore she suspected TD. *Id*. Dr. Raphael ordered that the Thorazine be gradually ended. *Id*. A March 1, 2011 visit revealed dystonic eye movements, which Dr. Raphael believed may be attributed to the drug Celexa, and therefore another change in Plaintiff's medication was ordered. *Id*. at ¶ 33. This was Dr. Raphael's last visit with Mr. Brandt. *Id*. at ¶ 34.

Dr. Bove, a board certified psychiatrist, was a staff psychiatrist at the Ulster County Jail.

Dkt. No. 55-18, James Bove Aff., dated June 25, 2015, at ¶ 1. On March 3, 2011, Dr. Bove examined Plaintiff and observed that Mr. Brandt showed signs of involuntary movements, which suggested to Dr. Bove either withdrawal dyskinesia or TD. *Id*. at ¶ 3.

As with Dr. Raphael, Plaintiff claims that Dr. Bove did not adequately discuss the side effects associated with certain medication. However, Dr. Bove maintains that he explained to the Plaintiff all changes to his drug regimen, and explained the side effects of the drugs that were prescribed, and that Mr. Brandt understood those explanations based upon questions Mr. Brandt asked, or other interactions with Dr. Bove. *Id*. According to Dr. Bove, the risk of TD was indeed discussed with the Plaintiff. *Id*. at ¶ 11. Dr. Bove sets forth in his Affidavit the attempts to "jockey" medication to obtain the best results while minimizing side effects, *id*. at ¶ 6, including changes to the Plaintiff's platelet and white blood cell counts. *Id.* at ¶ 5. According to Dr. Bove, on August 10, 2011, the Plaintiff complained about the change in his medication regimen, refused his Respirdal, and requested that he be restarted on Trazadone. *Id* at ¶ 6. Five days later, he requested that he be restarted on the Thorazine. *Id.* On September 6, 2011, the Plaintiff was requesting continuation of Lithium, even though he had experienced a skin reaction to the drug, and was informed of other side effects. *Id.* at ¶ 8. The Plaintiff was then transferred to Marcy Correctional Facility on December 8, 2011. *Id*. at ¶ 9.

## II. DISCUSSION

### A. Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden to demonstrate through

"pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(a) & (c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994) (citing, *inter alia*, FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 US 575, 585-86 (1986) and *Celotex*, 477 U.S. 317 at 324). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, "the court must 'resolve all ambiguities

and draw all factual inferences in favor of'" the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998) (quoting *Adams v. Dep't of Justice of the City of N.Y.*, 143 F.3d 61, 65 (2d Cir. 1998) (alterations omitted). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read his [or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### B. Plaintiff's Failure to Respond

On July 13 and July 29, 2015, Defendants Bove and Raphael, respectively, moved for summary judgment. Dkt. Nos. 55 & 57. Plaintiff's deadline to respond to Defendant Bove's Motion was Responses to those Motions were due on July 31, 2015, while the response to Defendant Raphael's Motion was set for August 25, 2015. Dkt. Nos. 56 & 58. Within the Notice of Motions attached to each Motion, Defendants' Counsel each advised Plaintiff that his failure to respond could result in the dismissal of his claim. Dkt. Nos. 55 & 57. While these notices are not as expansive

as the sample notice provided on the Court's website, the Court nevertheless *sua sponte* sent such notice to Plaintiff. Dkt. Nos. 56 & 58; *see also* N.D.N.Y.L.R. 56.2 (directing the moving party to provide a *pro se* plaintiff with proper notice and advising that a sample notice can be obtained from the District's website); Northern District of New York Website, *Pro Se* Forms, *available at* http://www.nynd.uscourts.gov/forms/notification-failure-respond-summary-judgment-motion (last visited March 25, 2016).

On July 30 and August 10, 2015, the Court received Plaintiff's requests for an extension of time to respond to the Motions; such requests were granted and Plaintiff's time to respond was extended to September 23, 2015. Dkt. Nos. 60, 61, & 64. On September 25, the Court received another request from Plaintiff to extend his response deadline; and again, the request was granted and Plaintiff was directed to respond to the Motions on or before November 30, 2015. Dkt. Nos. 65 & 66. On December 2, the Court received yet another request for an extension, and a final extension was granted, thus making Plaintiff's response deadline February 8, 2016. Dkt. Nos. 69 & 72. Yet, no response was forthcoming. Instead, on February 24, 2016, the Court received another request from Plaintiff, dated February 15, 2016, asking for an extension of time. Dkt. No. 73. Notably, Plaintiff did not provide any reason why he failed to comply with all prior deadlines. Having foudn that Plaintiff was granted ample time to respond, that request was accordingly denied. Dkt. No. 74.

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.*; FED. R. CIV. P.

56(c). Nevertheless, pursuant to Local Rule 7.1(a)(3), any facts set forth in the Defendants' Statements of Material Facts shall be deemed admitted unless specifically controverted by the opposing party. N.D.N.Y.L.R. 7.1(a)(3); Dkt. No. 55-29, Def. Bove's Rule 7.1 Statement of Material Facts; Dkt. No. 57-10, Def. Raphael's Rule 7.1 Statement of Material Facts; *see also N.Y. State Teamsters Conf. Pen. and Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648 (2d Cir. 2005) (deeming the assertions in the statement of material facts to be admitted where the non-movant supplied only conclusory denials in its response); FED. R. CIV. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion[.]").

Although a *pro se* litigant is entitled to a liberal construction of his filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules, *see Edwards v. INS*, 59 F.3d 5, 8-9 (2d Cir. 1995) (citing *inter alia, McNeil v. U.S.*, 508 U.S. 106, 113 (1993) and *Faretta v California*, 422 U.S. 806, 834 n.46 (1975)). However, the Second Circuit, acknowledging the court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may, in its discretion, opt to conduct a review of the entire record even where one of the parties has failed to file a 7.1 Statement. *Holtz v. Rockefeller & Co., Inc*., 258 F. 3d 62, 73 (2d Cir. 2001). Solely in deference to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record.

### C. Plaintiff's Fourteenth Amendment Claim for Lack of Informed Consent

At the heart of Plaintiff's constitutional claim is his assertion that both Defendants Raphael and Bove failed to properly inform him of the serious side effects associated with the medication

regimen the prescribed. The Second Circuit has held that, "in order to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonably prudent person would require in order to make an informed decision as to whether to accept or reject proposed medical treatment." *Pabon v. Wright*, 459 F.3d 241, 249-50 (2d Cir. 2006). To establish such a violation of the Fourteenth Amendment right to medical information "a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Id*. at 246.

Several points should be made regarding this Fourteenth Amendment claim. First the Second Circuit has clearly differentiated this claim, which is predicated upon Plaintiff's right to choose the appropriate medical course, from other prison medical care cases which are governed by the Cruel and Unusual Punishment Prohibition under the Eighth Amendment. *Id*. at 252-53 (citing *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Second, even under the *Pabon* standard, mere negligence will not suffice. *Id*. at 250-51. Rather, a heavier deliberate indifference standard is applicable because, as reasonably predicted by the Circuit, "it is not unlikely that, after receiving appropriate treatment that proved to have unpleasant side effects, a prisoner might claim he has not received sufficient information to allow him to decide whether to refuse that treatment." *Id*. at 250-51. Finally, the Court in *Pabon* noted that situations may exist where the prison official's interest in prescribing medication outweighs the inmate's refusal to take it. *See id*. at 252 (citations omitted). The Second Circuit noted in *Pabon* that "[t]he State may infringe upon a prisoner's constitutional rights so long as the infringing regulation or policy is 'reasonably related to legitimate

*-11-*

penological interests.'" *Id*. at 252 (quoting *Washington v. Harper*, 494 U.S. 210, 223 (1990)). "Therefore a prisoner's right to refuse medical treatment need not be honored if legitimate penological interests require the prisoner to be treated." *Id*.

With the *Pabon* standard in mind, the Court must consider the proof relative to the first two elements of this Fourteenth Amendment claim: Did a prison official fail to provide Plaintiff with the necessary information concerning the detrimental side effects of the medications that were being prescribed, and of the physical conditions observed, and if so, would Plaintiff have consented to taking the medications had he been provided with "such information as a reasonable patient would find necessary to making an informed decision regarding treatment options"? *Id*. at 246 & 250.

Plaintiff asserts definitively in his Second Amended Complaint that Drs. Bove and Raphael gave him Celexa, Neurontin, Depokote, Thorazine, Remeron, Trazadone, Cogentin, Requip, Vistaril, Risperdal, Wellbutrin and Geodon, and he asserts that some of this medication cause tremors and TD. Second Am. Compl. at p. 13. He also asserts that the Defendants never asked him "if [he] wanted to try these medications or told [him] about the adverse reactions." *Id*.

At his deposition, Plaintiff was questioned about his course of treatment. *See* Hurley Aff., Ex. E. At one point he noted:

> Q. Has anybody ever spoken to you about the side effects of any of the drugs you take for your mental health issues?
> A. No. I was never told that this could cause this, cause that. **If I was told, I would have never taken it.**

*Id*. at p. 57 (emphasis added).

At other parts of the deposition, however, Plaintiff recalls discussing jaw fluttering, neck twitching, and finger tapping with Dr. Raphael, and other unstated side effects of certain medication with Dr. Bove. *Id*. at pp. 53 & 126. Ultimately, the following question was asked:

> Q. I am just going to try one more time. In all of these discussions, has it jogged your memory at all about any conversation you had with Dr. Bove during the nine months that he was your psychiatrist there, jog your memory at all?
> A. No, No. I don't know. I can't remember things.
> Q. All right.
> A. I can't remember anything I spoke to him about, you know. It's been a long time.

*Id*. at p. 168.

As a general rule, a court may not discredit a person's deposition testimony on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury. *Scholastic, Inc. v. Harris*, 259 F.3d 73, 87 (2d Cir. 2001). An exception to this rule exists only in "rare circumstance[s,]" for example "where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory or incomplete. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). While in the present case the Plaintiff's deposition testimony is somewhat internally inconsistent, it is not so overtly contradictory that the determination of his credibility could be made by the Court at this juncture and the more prudent course would be to delay this credibility determination for the jury. *Id*. Therefore, Plaintiff's claim that he was not properly and effectively advised of the side effects of the medication, and would not have elected to use the medication if he had been so advised, may be sufficient to create a question of fact on these two issues. *See Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 716, 719, & 725-26 (2d Cir. 2010) (holding that where two parties have a conversation, and there is a divergence with the party's recollection of that conversation, the court cannot take a side at the summary judgment stage).

This then leaves the issue of deliberate indifference. *Pabon*, 459 F.3d at 246. While a physician's alleged failure to warn a patient about the side effects of particular medication could support a claim for medical malpractice in New York State, *see Banker v. Hoehn*, 278 A.D.2d 720

*-13-*

(3d Dep't 2000), the Second Circuit is clear that a higher level of fault is necessary to make out a Fourteenth Amendment claim under the United States Constitution. *Pabon*, 459 F.3d at 250-51. ("Inadvertent failures to impart medical information cannot form the basis of a constitutional violation. . . . simple negligence will not suffice"). "The Fourteenth Amendment test for deliberate indifference requires that Plaintiff prove that Defendants deliberately withheld information about the objectionable medication, specifically for the purpose of inducing an inmate to accept that medication." *Smith v. Corizon Health Servs.*, 2015 WL 6123563, at *2 (S.D.N.Y. Oct. 16, 2015) (citing *inter alia*, *Pabon*, 459 F.3d at 254).

On the record before the Court, the Plaintiff has not established a question of fact that either Dr. Bove or Dr. Raphael acted with the requisite culpable state of mind. Plaintiff had a long history of mental health issues prior to his incarceration at the Ulster County Jail. Hurley Aff., Ex. E, at pp. 20-24. He had previously been prescribed anti-psychotic and anti-depressant medication. Raphael Aff. at ¶¶ 7 & 20. The evidence of record establishes that the jail psychiatrists struggled with the proper selection and dosage of drugs to appropriately deal with the myriad of problems that Plaintiff presented, including his suicidal ideation and threats of violence. Raphael Aff. at ¶¶ 10, 16-18, 20, 22-23, 25-26, 28, 31, & 33; Bove Aff. at ¶¶ 4-6 & 8; Hurley Aff., Ex. A, at p. 19-28, 31, & 32-36; Hurley Aff., Ex. E, at pp. 52-53; Raphael 7.1 Statement at ¶¶ 35, 42-52, 54-55, 57-60, 62-70, 74-78, 81-83, 87-92, & 94-99. Whenever Plaintiff reported a problem related to his mental health or medication regimen, the Doctors adjusted his treatment and medication. Raphael Aff. at ¶¶ 10, 16-17, 20, 23, 25-26, 28, 31, & 33; Hurley Aff., Exh. A, at pp. 31-36. Plaintiff admits that the Ulster County medical staff were always attentive to his sick calls, even in a way that was not provided at the State run Marcy Facility where he was later transferred. Hurley Aff., Ex. E., at p. 166-68.

The Plaintiff's interaction with Thorazine is instructive in this regard. According to Plaintiff, he was prescribed Trazadone and Thorazine in 2010 by Dr. Raphael, and then his jaw began to flutter. Hurley Aff., Ex. E, at pp. 46-48; Raphael Aff. at ¶ 20. Upon reporting this symptom to the Doctor, she reduced his dosage. Hurley Aff., Ex. E, at p. 48. Mr. Brandt notes that they discussed anti-psychotic medications and the risk of TD. *See id*. at p. 49. After that fact, however, the Plaintiff asked Dr. Raphael to put him back on Thorazine because it helped with his sleep and anger. *Id*. at p. 54. Thus, even though Plaintiff was aware of potential and in his case, actual, side effects, the Plaintiff was swayed by the positive effects of the drug.

In sum, while the Defendants clearly struggled with the best medication or combination of medications to appropriately deal with the Plaintiff's mental health issues, there is nothing in the record presented to the Court that shows they were deliberately indifferent. Rather it appears that they were actively attempting to find the right medication regimen to combat Plaintiff's myriad of symptoms, including his impulse to cause harm to himself or others. Accordingly, it is recommended that the Defendants' Motion for Summary Judgment on Plaintiff's Fourteenth Amendment claim be **granted**.

### D. Plaintiff's Eighth Amendment Claim[7]

Plaintiff's second claim, based upon the Eighth Amendment, suffers from the same deficiency as the Fourteenth Amendment claim. The Constitution imposes a duty upon prison

---

[7] The Supreme Court recently held in *Kingsley v. Hendrickson* that the Eighth Amendment's Cruel and Unusual Punishment standard for claims of excessive force by prison officials does not apply to pretrial detainees, but instead a lesser "objectively unreasonable" standard under the Fourteenth Amendment was applicable. __ U.S. __, 135 S.Ct. 2466, 2471-73 & 2475 (2015). As the decision in *Kingsley* deals only with excessive force claims, this Court continues to apply Second Circuit precedent setting forth a subjective standard for cases involving allegations of deliberate indifference to a pretrial detainee's serious medical needs, which is identical to the standard utilized in similar Fourteenth Amendment cases. *See Caiozzi v. Korman*, 581 F.3d 63, 66, 68, 72 (2d Cir. 2009); *Iacovangelo v. Correctional Medical Care*, 624 Fed. App'x 10, 12 (2015) (citing *Caiozzi*, 581 F.3d at 72 and *Walker v. Schult*, 717 F.3d 119, 125 (2d. Cir. 2013)).

officials to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Iacovangelo v. Correctional Medical Care*, 624 Fed. App'x 10, 12 (2015). In order to sustain a claim of inadequate medical care under the Eighth, or Fourteenth, Amendment a prisoner must demonstrate that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 US 97, 104-05 (1976). That deliberate indifference standard has both an objective and subjective component. *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Objectively, plaintiff must show that he presented a serious medical need. *Hathaway v. Coughlin*, 37 F.3d 63, 64, 67 (2d Cir. 1994) (citing *inter alia, Wilson*, 501 U.S. at 298). Subjectively, and in regard to the necessarily culpable state of mind, the defendant must have had knowledge of, and ignored, an excessive risk to the inmate's health and safety. *Id.* at 66 (citing *Farmer*, 511 U.S. at 837).

Insofar as the Defendants argue that Plaintiff has not identified a serious medical need, the Court disagrees. Dkt. No. 57-11, Raphael Mem. of Law, at pp. 7-10; Dkt. No. 55-1, Bove Mem. of Law, at pp. 4-6. Given the fact-specific nature of Eighth Amendment denial of medical care claims, the Second Circuit has noted that it is difficult to formulate a precise standard of "seriousness" which encompasses those medical conditions properly within the realm of the Eighth Amendment. *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003). In assessing seriousness, courts take into account factors such as "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks, alterations, and citation omitted)). A serious medical need is generally characterized by "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403

(2d Cir 2005) (citation and internal quotation marks omitted).

The negative side effects of the anti-psychotic medication, which Plaintiff believes to be permanent, include involuntary movements and resultant disfigurement, which is said to affect Plaintiff's physical and emotional well being. Hurley Aff., Ex. E, at p. 58; *see also* Hurley Aff., Ex. D, at pp. 7-10; *Washington v. Harper*, 494 U.S. 210, 230 (1990). Thus, what is presented here is more involved than, for example, cases involving mere "disagreeable sensation." *Williams v. MCC Inst.*, 1999 WL 179604, at *7 (S.D.N.Y. Mar. 31, 1999) (holding that drowsiness and imbalance caused by the drug Dilantin being provided at the wrong time of day was not a serious medical need). Thus, there may be questions of fact as to the first prong of the deliberate indifference test.

As to the subjective element, a plaintiff must establish that the official acted in a manner equivalent to criminal recklessness. *See Farmer v. Brennan*, 511 U.S. at 836-37. Yet, an inmate's disagreement with his treatment or a differing opinion over the type or course of treatment also do not support an constitutional claim. *Chance v. Armstrong*, 143 F.3d at 703. Moreover, negligence, by itself, in the provision of medical care is insufficient. *Id.* (citing *Estelle,* 429 US at 105-06). Just because "a plaintiff feels that more should have been done for his condition is not a sufficient basis for deliberate indifference claim[.]" *Brown v. McElroy*, 160 F. Supp. 2d, 699, 706 (S.D.N.Y. 2011). Furthermore, "[i]ssues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." *Hill v. Cucione*, 657 F.3d 116, 123 (2d Cir. 2011).

The Defendants have each submitted their own Affidavits as well as an Affidavit from a psychiatric expert who reviewed the course of treatment and opined that there was no deviation from accepted medical standards, much less deliberate indifference. *See* Bove Aff., Raphael Aff., & Dkt.

No. 55-28, Jeffrey D. De Lisle Aff., dated July 1, 2015, at ¶¶ 3-4 & 9. Plaintiff has not established that there has been a significant delay in treatment of his condition nor in attending to his complaints of any side effects caused by his medication; instead, as noted above, Plaintiff agrees that his sick calls and complaints were promptly responded to. Hurley Aff., Ex. E, at pp. 166-68. While the Plaintiff concedes that due to his mental health condition he will likely be on psychiatric medication all of his life, Hurley Aff., Ex. E, at pp. 97 & 128, it appears that because he has developed known complications to the medicine prescribed by Defendants, he now disagrees with the type of dosage of such medication that was provided while he was incarcerated at the Ulster County Jail. *See* Am. Compl. at p. 2. Plaintiff's disagreement with his Doctors' medical judgment in this instance and under these facts cannot provide the basis for a civil rights claim, because a doctor's decision about the type of medicine that should be prescribed is generally a medical judgment that is an inappropriate basis for imposing liability under § 1983. *Chance v. Armstrong*, 143 F.3d at 703; *Bauer v. Kramer*, 424 F. App'x 917, 919 (11th Cir. 2011) (citing *Adams v. Poag*, 61 F.3d 1537, 1547 (11th Cir. 1995) (for the proposition that the determination of whether to prescribe anti-psychotic medication is a "medical judgment" and, therefore, "an inappropriate basis for imposing liability under section 1983"); *Wright v. Genovese*, 694 F. Supp. 2d 137, 156-57, & 159-60 (N.D.N.Y. 2010) *aff'd* 415 F. App'x 313 (2d Cir. 2011) ("Plaintiff's disagreement with particular medical decisions by the defendants and conclusory allegations of deliberate indifference do not negate the extensive evidence that Dr. Genovese and others reasonably and diligently addressed plaintiff's medical needs [including the prescription and termination of pain medication] over an extended period of time.").

Given that Plaintiff has failed to show that the Defendants' acted with deliberate indifference, his Eighth Amendment claims fail as a matter of law. Thus the Court recommends that

the Defendants' Motions for Summary Judgment on this claim be **granted**.

### E. Qualified Immunity

Finally, because the Court finds that the Defendants were not deliberately indifferent to the Plaintiff's serious medical needs, it is not necessary to decide their entitlement to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Nevertheless, were the Court to reach that issue, it would conclude that the Defendants would have such immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, __ U.S. __, 132 S. Ct. 2088, 2093 (2012) (citing *Ashcroft v. al-Kidd*, __ U.S. __, 131 S.Ct. 2074, 2080 (2011). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id*. (citation omitted). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft*, __ U.S. __, 131 S.Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The doctors in the present case were charged with the obligation to provide adequate psychiatric care to the Plaintiff, while also maintaining the safety of the institution in general, and Mr. Brandt in particular. Their efforts to deal with his serious psychiatric issues, to ensure that he did not harm himself or others, and to do so by prescribing powerful medication which had both significant benefits and significant side effects, cannot be said to have violated clearly established law. Thus, both Defendants would also be entitled to summary judgment on this separate ground.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motions for Summary Judgment (Dkt. Nos. 55 & 57) be **GRANTED** and this entire action be **DISMISSED**, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: March 25, 2016
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge